UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SCOTT DEKUYPER, <br><br> Plaintiff, <br><br> -v- <br><br> THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT ("NYPD") CHIEF OF DEPARTMENT JOSEPH ESPOSITO, NYPD OFFICER PATRICK MULLANE, SHIELD NO. 5171, NYPD OFFICER FNU/LNU SHIELD NO. 867 (believed to be either PEDRO CABAL or SHREEGANES MEADE), and NYPD OFFICERS JOHN and JANE DOE # 1 - 5 (The names being fictitious, as the true names and shield numbers are not presently known), in their individual and official capacities, <br><br> Defendants. | COMPLAINT AND DEMAND FOR JURY TRIAL <br><br> Index No. 14-cv-8249 (DLC) <br><br> ECF CASE |

Plaintiff, by counsel GIDEON ORION OLIVER, as and for his Complaint against Defendants, hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.   Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988 for violations of his civil rights, as secured by said statutes and the Constitution of the United States.

2.   On October 15, 2011, Mr. Dekuyper participated in a First Amendment Assembly related to Occupy Wall Street ("OWS") in the Times Square area. Without lawful authority or justification, Defendants attacked and arrested Mr. Dekuyper. In the course of the attack, John Doe defendants beat Mr. Dekuyper in the head and elsewhere as Defendant Esposito looked on. After an excessive time in police custody, Mr. Dekuyper was eventually released and charged with various crimes. After numerous trips back to New York City from Lewes, Delaware to face

the charges, the case was eventually dismissed on speedy trial grounds.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

5. Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiff's claims arose in the Southern District of New York.

## PARTIES

6. Plaintiff JOHN SCOTT DEKUYPER is a Caucasian male, and at all times relevant to this action was a resident of Lewes, Delaware.

7. Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

8. Defendant City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

9. At all times relevant herein, defendant JOSEPH ESPOSITO was the NYPD's Chief of Department, the highest uniformed ranking officer, and he was a supervisors and high-level NYPD policymaking official personally involved in depriving Plaintiff of his rights and/or in developing and/or implementing the unconstitutional policies, practices, customs and/or conduct complained of herein.

10. Defendant NYPD OFFICER PATRICK MULLANE, SHIELD NO. 5171, was at all times herein an officer, employee, and agent of the NYPD and he was personally involved in depriving Plaintiff of his rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below. Defendant Mullane is being sued herein in his individual and official capacities.

11. Defendant NYPD OFFICER FNU/LNU SHIELD NO. 867 (believed to be either PEDRO CABAL or SHREEGANES MEADE was at all times herein an officer, employee, and agent of the NYPD and he was personally involved in depriving Plaintiff of his rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below. Defendant FNU/LNU SHIELD NO. 867 is being sued herein in his individual and official capacities.

12. Defendants ESPOSITO, MULLANE, SHIELD NO. 867, and DOES were personally involved in directing, supervising, and/or assisting in Plaintiff's arrest and/or arrest processing and/or failed to intervene to prevent injuries to Plaintiff.

13. The individually named defendants "JOHN AND JANE DOES NOS. 1 THROUGH 5" are NYPD officers whose real names are not yet known to Plaintiff and who were personally involved in depriving Plaintiff of his rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below.

14. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

15. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by the defendant City.

16. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by the defendant City.

17. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

18. At all times relevant herein, as set forth more fully below, defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

19. Each individual defendant is sued in her or his individual and official capacities.

## STATEMENT OF FACTS

20. On the evening of October 15, 2011, Mr. Dekuyper was in New York City with his wife and teenage daughter.

21. Mr. Dekuyper and his wife and daughter participated in an OWS-related First Amendment Assembly that included a march into the Times Square area.

22. Upon information and belief, defendant Esposito was in charge of NYPD response to the protest, and was actually in command and control of NYPD agents and other resources in the Times Square area.

23. In the Times Square area, Mr. Dekuyper separated from his wife and daughter.

24. Police funneled perceived protesters into a kettle in the vicinity of West 46th Street and 7th Avenue.

25. At around approximately 6:00PM, Mr. Dekuyper was lawfully present in the vicinity of West 46th Street and 7th Avenue, pressed up against a metal barricade, with protesters all around him and police on the other side of the barricade.

26. At that location, Defendant Esposito and other NYPD officers under his command and supervision shoved, punched, and kicked protesters, and NYPD officers on horseback threatened to trample Plaintiff and other protesters.

27. Defendant Esposito was across the barricades from Mr. Dekuyper.

28. Without lawful authority or justification, Defendant Esposito grabbed Mr. Dekuyper and began to pull Mr. Dekuyper toward him.

29. As Defendant Esposito pulled Mr. Dekuyper toward him, Defendants SHIELD NO. 5171 and DOES repeatedly struck Mr. Dekuyper, including in the head with fists and a metal asp.

30. Defendant SHIELD NO. 5171 struck and punched Mr. Dekuyper repeatedly in the head.

31. Defendants ESPOSITO, SHIELD NO. 5171, and other Defendants pulled Mr. Dekuyper into police custody behind police lines.

32. Mr. Dekuyper was instructed to put his hands behind his back, which he did.

33. Once Mr. Dekuyper was secured behind police lines, Defendants ESPOSITO, SHIELD NO. 5171, and/or other Defendants threw Mr. Dekuyper to the ground.

34. Mr. Dekuyper's left arm was pinned under him as a Defendant or Defendants knelt down on his back, pushing him into the cement.

35. The officers directed Mr. Dekuyper to put his hands behind his back, which he could not do.

36. Mr. Dekuyper was in a great deal of pain and could not breathe. He told the officers he could not move his arm and that he could not breathe.

37. Defendants continued to kneel on and strike Mr. Dekuyper.

38. Mr. Dekuyper was eventually brought to a nearby NYPD Precinct.

39. Defendant Mullane was assigned to process Mr. Dekuyper's arrest.

40. At the precinct, Mr. Dekuyper informed Defendant Mullane that he needed to take medication that was in his backpack in order to treat his thyroid cancer.

41. Defendant Mullane failed to provide Mr. Dekuyper with his medication or any medical treatment.

42. After some time, Defendant Esposito arrived at the precinct.

43. Defendant Esposito instructed Defendant Mullane and other officers words to the effect that "This guy's not going home, he tried to rip the badge off my shirt."

44. Mr. Dekuyper responded by saying words to the effect of, "Come on, Chief, you know that's not true. Come talk to me."

45. Defendant Esposito refused to engage Mr. Dekuyper, and instead left the precinct.

46. After Defendant Esposito left the precinct, the tenor of his interactions with police worsened, and Mr. Dekuyper was treated with hostility by many of the officers he came in contact with.

47. After an excessively long period of time, Mr. Dekuyper was eventually brought to 100 Centre Street.

48. Defendants Mullane and Esposito provided false information to the Office of the District Attorney of New York County ("DANY").

49. After well over 24 hours in custody, Mr. Dekuyper appeared before a New York City Criminal Court judge to face several misdemeanor and violation charges based on allegations sworn to by Defendants Mullane and Esposito.

50. Mr. Dekuyper pleaded not guilty to those charges.

51. After making a number of court appearances in New York City, the criminal case against Mr. Dekuyper was ultimately dismissed on speedy trial grounds.

52. As a result of this incident, Mr. Dekuyper suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

### FIRST CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

53. Platiniff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

54. Defendants, under color of state law, unlawfully seized and arrested plaintiff.

55. Defendants did not have probable cause to arrest plaitniff, nor was it objectively reasonable for defendants to believe that they did have probable cause to arrest plaintiff.

56. Defendants' decision to arrest plaintiff was based upon plaintiff's First Amendment-protected expression, and not upon plaintiff's violation of any provision of the penal law.

57. Plaintiff was unjustifiably deprived of his liberty for over 24 hours as a result of these false arrests.

58. By the conduct described above, defendants, under color of state law, subjected plaintiff to the foregoing acts and omissions without due process of law and in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, thereby depriving Plaintiff of his rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

   a. Freedom to engage in protected speech, expression and association;

   b. Freedom from unreasonable seizures of his person, including but not limited to the excessive use of force;

   c. Freedom from arrest without probable cause;

   d. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which plaintiff was aware of and did not consent to;

   e. Freedom from abuse of process;

   f. Freedom from deprivation of liberty without due process of law;

   g. Freedom from malicious prosecution;

   h. Freedom from having governmental actors fail to intervene to prevent constitutional violations when they knew such violations were occurring and when they reasonably could have prevented them from occurring;

   i. The enjoyment of equal protection, privileges and immunities under the laws.

59. As a result of the foregoing, plaintiff was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SECOND CAUSE OF ACTION**
**FAILURE TO INTERVENE – SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**

60. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

61. By failing to remedy the wrongs committed by his subordinates, and in failing properly to train, screen, supervise, or discipline his or her subordinates, defendant supervisory officer ESPOSITO injured plaintiff and caused damage and injury in violation of Plaintiff's rights under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

62. As a result of the foregoing, plaintiff was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### THIRD CAUSE OF ACTION
### *MONELL* CLAIM AGAINST DEFENDANT CITY
### THROUGH 42 U.S.C. § 1983

63. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

64. All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

65. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

66. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies,

usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

67. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but is not limited to, the City's customs, practices, procedures, and rules regarding probable cause to arrest, crowd control at demonstrations, use of force, use of force reporting, and arrest processing.

68. As a result of the foregoing, plaintiff was deprived of his liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## JURY DEMAND

69. Plaintiff demands a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

A. Compensatory damages against the defendants jointly and severally; and

B. Punitive damages against the individual defendants; and

C. Attorney's fees and costs pursuant to 42 USC §1988; and

D. Such other and further relief as the Court deems just and proper.

DATED:   New York, New York
         October 15, 2014

Respectfully submitted,

/S/

Gideon Orion Oliver
*Attorney for Plaintiff*

10

277 Broadway, Suite 1501
New York, NY  10007
t: 646-263-3495

11