14-CV-8249 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN SCOTT DEKUYPER,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Amy Robinson; Andrew Lucas*
*Tel:  (212) 356-3518*
*Matter  #:  2015-005020*

## TABLE OF CONTENTS

TABLE OF CONTENTS  ........................................................................................ i

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT OF FACTS.................................................................................... 1

STANDARD OF REVIEW ................................................................................. 4

I.  PLAINTIFF'S FALSE ARREST CLAIM MUST BE DISMISSED AS
PROBABLE CAUSE EXISTED FOR HIS ARREST AND THE
DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................................ 5

      A.  Probable Cause Existed to Arrest Plaintiff for Obstructing
         Governmental Administration ............................................................... 5

      B.  Probable Cause Existed to Arrest Plaintiff for Disorderly
         Conduct:  Fighting, Violent, Tumultuous or Threatening
         Behavior ............................................................................................ 6

      C.  Probable Cause Existed to Arrest Plaintiff for Harassment in the
         Second Degree ................................................................................... 7

      D.  Probable Cause Existed to Arrest Plaintiff for Disorderly
         Conduct:  Blocking Pedestrian or Vehicular Traffic............................. 8

      E.  Probable Cause Existed to Arrest Plaintiff for Disorderly
         Conduct:  Refusal to Comply with Lawful Order to Disperse 9

      F.  Plaintiff's Retaliation Claim Fails as There Was Probable Cause
         to Arrest Plaintiff ............................................................................... 9

II.  PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE MUST BE
DISMISSED ....................................................................................................... 10

III.  PLAINTIFF'S MALICIOUS PROSECUTION CLAIM MUST BE
DISMISSED ....................................................................................................... 13

IV. PLAINTIFF'S ABUSE OF PROCESS CLAIM MUST BE DISMISSED  ................... 15

V. PLAINTIFF'S FOURTEETH AMENDMENT DUE PROCESS CLAIM
MUST BE DISMISSED ....................................................................................... 17

VI.          PLAINTIFFFAILS TO ESTABLISH PERSONAL
INVOLVEMENT AND HIS FAILURE TO INTERVENE AND
SUPERVISORY LIABILITY CLAIMS MUST BE DISMISSED ........................................ 17

**VII.   PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED AS HE DID NOT SUFFER A CONSTITUTIONALLY COGNIZABLE INJURY**......................... 20

    **A.   Plaintiff Has Failed to Plausibly Present a Claim for Municipal Liability** ................................................................................................ 20

    **B.   Plaintiff's Municipal Liability Claim Fails as He Did Not Suffer Any Constitutional Violation By Defendants** ...................................... 21

    **C.   Plaintiff's Municipal Liability Claim Fails as He Cannot Present Any Evidence of a Municipal Policy, Custom, or Practice that Caused His Alleged Constitutional Violation** ....................................... 22

**VIII.   THE INDIVDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY** ......................................................................................................... 22

**CONCLUSION** ................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) ........................................................18

Anderson v. Creighton, 483 U.S. 635 (1987) ...........................................................23

Ashcroft v. Iqbal, 556 U.S. 662 (2009)................................................................20, 21

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .......................................................21

Barnes v. City of New York, 2015 U.S. Dist. LEXIS 113279 (S.D.N.Y. Aug. 26, 2015) ...................................................................................................................21

Basinski v. City of New York, 14 cv 1057 (LTS), 2016 U.S. Dist. LEXIS 77349 (S.D.N.Y. June 14, 2016)............................................................................................8

Betts v. Hearman, 751 F.3d 78 (2d Cir. 2014)...........................................................23

Bohm v. Holzberg, 365 N.Y.S.2d 262 (App. Div. 1975) ...........................................16

Bradway v. Gonzales, 26 F.3d 313 (2d Cir. 1994) ....................................................22

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................5, 17, 22

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ...................................................21

Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994).............................................................15

Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999)........................................5

Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d Cir. 2010)........................................24

Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003)..............................................21

De Santis v. City of New York, 2011 U.S. Dist. LEXIS 99126 (S.D.N.Y. 2011) ........................15

De Santis v. City of New York, 2011 U.S. Dist. LEXIS 99126, at *24 (S.D.N.Y. 2011) ..........................................................................................................15

DeFilippo v. County of Nassau, 183 A.D.2d 695 (2d Dep't 1992)..............................14

Esmont v. City of New York, 371 F.Supp. 2d 202 (E.D.N.Y. 2005) ............................12

Estate of Jaquez v. City of New York, 104 F. Supp. 3d 414 (S.D.N.Y. 2015)..............................24

Faruki v. City of New York, 517 Fed. Appx. 1 (2d. Cir. 2013) ...............................11, 14

Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ...........................................................17

Garcia v. Bloomberg, 865 F. Supp. 2d 478 (S.D.N.Y. 2012).................................20, 22

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2015) ....................................................4, 22, 23

Gonzalez v. City of New York, 38 Fed. Appx. 62 (2d Cir. 2002).................................17

Graham v. Connor, 490 U.S. 386 (1989)...................................................................10, 11

Hauser v. Bartow, 273 N.Y. 370 (1937) ....................................................................15

Higginbotham v. City of New York, 14 Civ. 8549 (PKC), 2015 U.S. Dist. LEXIS
    62227 (S.D.N.Y. May 12, 2015)........................................................................13

Hudson v. McMillian, 503 U.S. 1 (1992) .................................................................12

Hunter v. Bryant, 502 U.S. 224 (1991)....................................................................23

Jackson v. City of New York, 2005 U.S. LEXIS 12986 (S.D.N.Y 2005).....................11

Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 (S.D.N.Y 2008)............6

Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973)). ...................................................10, 11

Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001).......................................11

Kia P. v. Mcintyre, 235 F.3d 749 (2d Cir. 2000) .....................................................17

Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010) .......................................................9

LaTrieste Rest. & Cabaret v. Vill. of Port Chester, 40 F.3d 587 (2d Cir. 1994) .........17

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) .....................................................23, 24

Lopez v. City of New York, 901 F. Supp. 684 (S.D.N.Y. 1995).................................16

Malley v. Briggs, 475 U.S. 335 (1986).....................................................................23

Marcavage v. City of New York, 2010 U.S. Dist. LEXIS 107724 (S.D.N.Y. 2010) .......6

Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012).....................................4, 5

McCann v. Coughlin, 698 F.2d 112 (2d Cir. 1983).................................................19

Meriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989) ...........................................19

Monell v. Department of Social Services of the City of New York, 436 U.S. 658
    (1978)....................................................................................................................21

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ........................................................13, 15

Occupy Nashville v. Haslam, 769 F.3d 434 (6th Cir. 2014) .........................................23

Plumhoff v. Rickard, 134 S. Ct. 2012 (2014) ...............................................................23

Posr v. Court Officer Shield # 207, 180 F.3d 409 (2d Cir. 1999)..................................13

Richardson v. N.Y. City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247
(S.D.N.Y. 2009).........................................................................................................16

Rincon v. City of New York, 03 Civ. 8276 (LAP, 2005 U.S. Dist. LEXIS 4335
(S.D.N.Y. 2005).........................................................................................................12

Rohman v. New York City Transit Auth., 215 F.3d 208 (2d Cir. 2000)........................13

Romano v. Howarth, 998 F.2d 101 (2d Cir. 1993)........................................................12

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) ..............................................15

Scott v. Harris, 550 U.S. 372 (2007).............................................................................4

Seabrook v. City of New York, 2016 U.S. Dist. LEXIS 17113 (E.D.N.Y. Feb. 10,
2016)..........................................................................................................................15

Singer v. Fulton County, 63 F.3d 110 (2d Cir. 1995)....................................................5

Southerland v. City of New York, 667 F.3d 87 (2d Cir. 2011) ......................................17

Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003) ...........................................................24

Strumpf v. Asdourian, 2006 N.Y. Misc. LEXIS 3976 (N.Y. Sup. Ct. 2006) ................14

Tracy v. Freshwater, 623 F.3d. 90 (2d Cir. 2010) .................................................12, 24

U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) .........................................................9

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999)......................................................12

Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830 (S.D.N.Y. 2013)................24

Whitley v. Albers, 475 U.S. 312 (1986) ........................................................................12

Wieder v. City of New York, 569 F. App'x 28 (2d Cir. 2014) .......................................18

Wilkins v. Gaddy, 559 U.S. 34 (2010) ..........................................................................12

Wood v. Moss, 134 S. Ct. 2056 (2014) .........................................................................22

<u>Ying Jing Gan v. City of New York</u>, 996 F.3d 522 (2d Cir. 1993) .................................................17

<u>Zahrey v. City of New York</u>, 2009 U.S. Dist. LEXIS 31893 (S.D.N.Y. 2009) ...........................16

## STATUTES

New York City Charter §435(a) ...........................................................................................5, 9

NY PL § 240.20(1) ...........................................................................................................7

NY PL §195.05 ...............................................................................................................5, 6

NY PL §240.20(1) ...........................................................................................................7

NY PL § 240.20(5) ...........................................................................................................8, 9

NY PL §240.20(6) ...........................................................................................................9

NY PL §240.26 ...............................................................................................................7

Defendants, City of New York, Joseph Esposito, Shreeganesh Meade and Patrick Mullane by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submits this memorandum of law in support of the motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

## STATEMENT OF FACTS

On October 15, 2011, plaintiff was in New York City participating in an Occupy Wall Street ("OWS") event with his wife and daughter.  56.1, ¶1.  The OWS event on October 15, 2011, included a march from Zuccotti Park into Times Square.  56.1, ¶2. Plaintiff believed that there were tens of thousands of protesters in the crowd. 56.1, ¶5. Chief of Department Joseph Esposito, the highest ranking uniformed officer in the NYPD, was on scene at Times Square October 15, 2011.  56.1, ¶22.  Two lanes of traffic were stopped and slowed in Times Square prior to plaintiff's arrest.  56.1, ¶8.  Plaintiff saw barriers on both side of the street.  56.1, ¶9.  Police used barriers to attempt to keep the crowd out of the roadway on Seventh Avenue. 56.1, ¶10.  Despite police attempting to keep them out of the roadway of Seventh Avenue, protestors did move forward further into the roadway of Seventh Avenue.  56.1, ¶11. Video depicts a large crowd of protestors trying to break through barriers that were set up.  56.1, ¶ 12.

Plaintiff was present in the crowd of protestors near the north east corner of Seventh Avenue and 46th Street at approximately 6:00 p.m.  56.1, ¶14.  Prior to plaintiff's arrest, police issued numerous orders to the protestors in the vicinity of plaintiff's arrest via bullhorn and shouting verbally to "get back, let go of the barriers," and "back up, back up, back up." 56.1, ¶15.   Plaintiff testified that these orders were "just requests."  56.1, ¶16.  As the scene became "a little crazy," plaintiff's wife and daughter, became "uncomfortable with the crush,"

---

[1] A Stipulation of Dismissal and Order discontinuing this action with prejudice against Officer Pedro Cabral was entered on July 8, 2016, docket entry [#35].

1

and left the scene. I was fine." 56.1, ¶17.  Plaintiff testified that, "[i]t was pretty good bedlam." 56.1, ¶18.  Plaintiff further testified that he was well coached in Zuccotti Park with respect to police interaction before the march and told that if he got arrested to should out his name.  56.1, ¶¶3-4.

**First Encounter with Police:**    During the protest in Times Square, plaintiff pushed a barrier that was between himself and Chief Esposito. 56.1, ¶19.  During this encounter with police, plaintiff was screaming at police and flaring his arms. 56.1, ¶20.  Chief Esposito was concerned that plaintiff was going to assault him.  56.1, ¶21. Chief Esposito ordered plaintiff to, "move back.  Stop trying to come over the barrier, get your hands off the barrier, move back." 56.1, ¶22.  Plaintiff, with one hand on a barrier grabbed hold of Chief Esposito's shield and tried to take it from his shirt.  56.1, ¶23. At that time, Chief Esposito attempted to place plaintiff under arrest for grabbing and trying to take his shield, but plaintiff, with the help of other protestors who pulled him back into the crowd, evaded arrest.  56.1, ¶24.

**Second Encounter with Police:**    Plaintiff's second encounter with police, including his arrest, can be seen on video produced by plaintiff.  56.1, ¶25.  Some minutes after his first encounter with police, video shows that plaintiff made his way through the crowd of protestors and back to the front line of a barrier between protestors and police. 56.1, ¶26. Plaintiff saw police officers trying to pull back the barriers. 56.1, ¶28.  Plaintiff heard officers yelling at the crowd to get back.  56.1, ¶31. Plaintiff testified that he was standing in the street near the front of the line of police, "in a standoff." 56.1, ¶32.  Plaintiff provided advice in an on-line forum, including, "don't let them take you off focus and respond in kind if you are abused." 56.1, ¶33.  Video evidence depicts plaintiff strike Officer Meade.  56.1, ¶34.   Plaintiff testified that he was, "talking with his hands." 56.1, ¶34.  Officer Meade was stunned.  56.1, ¶36.

During the encounter, plaintiff shouted at police saying, "why don't you move the horses back, or something like that." 56.1, ¶37. After striking Officer Meade, plaintiff got into a "defensive stance on [his] back heel." 56.1, ¶38. Chief Esposito believed that plaintiff cocked his right arm back to throw a punch. 56.1, ¶39. Video depicts plaintiff with his arm thrown back as if to throw a punch. 56.1, ¶38. Plaintiff testified that he "verbally argued" with police and told Chief Esposito to, "fuck Off. Stop hitting us. Um, and that's on the record." 56.1, ¶40. Seconds later, Chief Esposito moved toward plaintiff, and plaintiff aggressively raised his both arms at Chief Esposito. 56.1, ¶41. Chief Esposito grabbed plaintiff and pulled plaintiff towards him to place him under arrest. 56.1, ¶43. Plaintiff grabbed the Chief in a struggle. 56.1, ¶¶44-46. Chief Esposito then slipped and began to fall to the ground. 56.1, ¶48. Officer Meade saw Chief Esposito fall to the ground during the struggle with plaintiff. 56.1, ¶49. Officer Meade gave plaintiff a verbal direction to let go of the Chief, and plaintiff refused. 56.1, ¶49. Officer Meade then tried to release plaintiff's grip on Chief Esposito. 56.1, ¶50. Unable to get plaintiff to release his grip on the Chief, Officer Meade struck plaintiff to force him to release his grip from the Chief. 56.1, ¶51.

Chief Esposito did not see Officer Meade strike plaintiff as he was falling to the ground. 56.1, ¶53. When the Chief got back up, video evidence shows that the Chief removed himself and Officer Meade from the scene of arrest as other officers were effecting plaintiff's arrest. 56.1, ¶54. Plaintiff believed that Chief Esposito tried to restrain Officer Meade from hitting him. 56.1, ¶55. Plaintiff did not retreat from the scene, because he was not "thinking that clearly at that point." 56.1, ¶56. The first time Officer Patrick Mullane saw plaintiff was when plaintiff was standing in handcuffs. 56.1, ¶57. Plaintiff was arrested in the street on the evening of October 15, 2011, and charged under PL §155.30(5), attempted grand larceny in the fourth

degree, PL §195.05, obstruction of governmental administration, PL §205.30, resisting arrest and PL §240.20(1), disorderly conduct.  56.1, ¶58.  Officer Mullane transported plaintiff to the substation and placed him in a holding cell.  56.1, ¶61.  Chief Esposito went to the Times Square substation to identify plaintiff to Officer Mullane.  56.1, ¶62.  When Chief Esposito arrived at the substation, he went to plaintiff's holding cell, identified plaintiff, and said, "that guy tried to grab my badge."  56.1, ¶63.

Officer Mullane transported plaintiff from the substation to the Mass Arrest Processing Center ("MAPC") at One Police Plaza for arrest processing.  56.1, ¶64. Plaintiff was subsequently transported to the Manhattan Court Section for arraignment on the charges and was then released. 56.1, ¶66.  Plaintiff took his medication on the day of his arrest.  56.1, ¶67.  Plaintiff did not seek medical attention following his release.  56.1, ¶68.  Plaintiff later appeared at Manhattan Criminal Court on these charges and was arrested for carrying a handgun and ammunition into the courthouse.  56.1, ¶69.  Plaintiff was convicted and was sentenced to one year in prison in relation to weapons charge.  56.1, ¶70.  The charges against plaintiff that are the subject of the instant case were ultimately dismissed on speedy trial grounds.  56.1, ¶71.

## STANDARD OF REVIEW

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts… When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007); see Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); Garcia v. Doe, 779 F.3d 84 (2d Cir. 2015).

A motion for summary judgment requires the party to "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

I.     **PLAINTIFF'S FALSE ARREST CLAIM MUST BE DISMISSED AS PROBABLE CAUSE EXISTED FOR HIS ARREST AND THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The existence of probable cause to arrest constitutes justification and is a complete defense to a claim of false arrest and imprisonment.  Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999).   Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012).  Probable cause is analyzed as an objective test, distinct from any alleged motivations of the arresting officer.  "[M]otivation  is not a consideration in assessing probable cause."  Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995).

**A. Probable Cause Existed to Arrest Plaintiff for Obstructing Governmental Administration**

Under N.Y. Penal Law §195.05 "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]"  Plaintiff obstructed governmental administration, *inter alia*, by interfering with the officers' more general duties under New York City Charter §435(a), and refusing to comply with lawful orders, and by interfering with an officer issuing those orders and attempting to maintain the police barriers and keep Times Square moving.

Plaintiff cannot deny that his physical conduct interfered with the officers' attempts to clear the street. Any argument that his physical actions were not enough to effectively interfere and hamper officers' efforts is without merit. As noted in this Circuit, plaintiff's refusal to comply, and his decision to construe the orders as "just requests," was enough to establish probable cause for obstruction of governmental administration. Marcavage v. City of New York, 2010 U.S. Dist. LEXIS 107724 at *30 (S.D.N.Y. 2010) (finding probable cause for NY PL 195.05 where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest); Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 at *10 (S.D.N.Y 2008) ("an officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer").

Additionally, plaintiff testified that he was standing in the street near the front of the line of police, "in a standoff," and his behavior, as evidenced on video provided by plaintiff, certainly supports his statement.  See 56.1 ¶32.  Further, plaintiff testified that he heard officers shouting at the crowd to get back, but believed that these orders were, "just requests."  56.1 ¶ 16. Plaintiff's decision to not only to ignore police orders, to approach an officer striking him and to approach another officer raising his hands towards his face screaming, "fuck off…," regardless of the purpose, provided at least arguable probable cause to arrest.  56.1 ¶ 33-34, 44.  As a result, plaintiff was properly arrested under N.Y. PL §195.05, and defendants had probable cause or arguable probable cause exists for his arrest for obstructing their attempts to keep the area moving with their presence, barricades and mounted officers.

**B. Probable Cause Existed to Arrest Plaintiff for Disorderly Conduct:  Fighting, Violent, Tumultuous or Threatening Behavior**

Under N.Y. PL §240.20(1), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or in violent, tumultuous or threatening behavior.  As shown above in section A., plaintiff is captured on video striking an officer,  throwing his both arms up in the Chief's face, and  by his own admission, cursing at the police, telling Chief Esposito to, "fuck off.  Stop hitting us.  Um, and that's on the record."     Video evidence supplied by the plaintiff clearly shows plaintiff engaging in a violent, tumultuous and threatening manner towards officers, probable cause existed for his arrest under N.Y. PL § 240.20(1).  As a result, plaintiff was properly arrested under N.Y. PL § 240.20(1), and defendants had probable cause or arguable probable cause exists for his arrest.

### C. Probable Cause Existed to Arrest Plaintiff for Harassment in the Second Degree

Under N.Y. PL §240.26, a person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person he strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.  As set forth above, the video produced by plaintiff shows, inter alia, plaintiff refusing repeated orders to stay back, striking an officer and engaging in a violent confrontation with Chief Esposito and Officer Meade.  In another decision, on review of video, the District Court recently dismissed an action in which the plaintiff, who was physically imposing challenged an officer despite that plaintiff staying relatively calm:

> it can be seen that [plaintiff] is taller than [the officer] and physically imposing; that [plaintiff] repeatedly slid his right hand into his pants pocket throughout the course of the interaction; and that [plaintiff] kept his left hand elevated to hold his phone — a hard object — at face level, within striking distance of the officer.  It can also be seen that, when [the officer] attempted to turn his focus from [plaintiff] back to his original police business, [plaintiff] took a step towards [the officer], rather than remaining off to the side as instructed.

7

<u>Basinski v. City of New York</u>, 14 cv 1057 (LTS), 2016 U.S. Dist. LEXIS 77349, *6 (S.D.N.Y. June 14, 2016).   Here, plaintiff heard repeated orders to get back.   56.1 ¶15. Plaintiff is physically imposing—by his own admission, a large guy.   56.1 ¶27. He was not only within striking distance of the officer, he actually struck an officer and then continued to gesture violently towards officers while cursing at them.   The video attached as Exhibit C, and the stills C1-5 show plaintiff's tumultuous behavior toward police.   Moreover, as police attempted to place plaintiff in custody he admittedly backed away from their attempt to arrest him.   56.1 ¶ 45. Video evidence supplied by plaintiff shows plaintiff struggling with Chief Esposito and other officers attempting to effect his arrest.   Robinson Decl., Ex C, 00:41 – 01:06.   Alternatively, defendants are entitled to qualified immunity as it was at least arguably reasonable to believe there was probable cause for plaintiff's arrest after ignoring orders to get back, encroaching on officers, and raising his hands up to the Chief's face in response to reasonable requests.

### D. Probable Cause Existed to Arrest Plaintiff for Disorderly Conduct:  Blocking Pedestrian or Vehicular Traffic

N.Y. PL § 240.20(5) makes it a violation when "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof he obstructs pedestrian or vehicular traffic."   Two lanes of traffic were stopped and slowed in Times Square just prior to plaintiff's arrest.   56.1, ¶8.   Plaintiff saw barriers on both side of the street.   56.1, ¶9.   Some minutes after his first encounter with police, video shows that plaintiff made his way through the crowd of protestors and back to the front line of a barrier between protestors and police in the street. 56.1, ¶26.   Plaintiff testified that he was standing in the street near the front of the line of police, "in a standoff."   56.1, ¶32.   Plaintiff was arrested in the street.   56.1 ¶58.   As a result, probable cause, or arguable probable cause, existed to arrest plaintiff under this provision.

### E. Probable Cause Existed to Arrest Plaintiff for Disorderly Conduct:  Refusal to Comply with Lawful Order to Disperse

Under N.Y. PL §240.20(6), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he refuses to comply with a lawful order of the police to disperse.  "Under New York's disorderly conduct statute, an order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order."  U.S. v. Nelson, 500 Fed. Appx. 90, 93 (2d Cir. 2012).  Under New York City Charter §435(a) "the police department and force shall have the power and it shall be their duty to…preserve order at…all public meetings and assemblages…regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public…" Id.

Prior to plaintiff's arrest, police issued numerous orders to the protestors in the vicinity of plaintiff's arrest via bullhorn and shouting verbally to "get back, let go of the barriers," and "back up, back up, back up."  Robinson Decl., Ex. C, 00:00 – 00:43.  Officers can be heard on video evidence supplied by plaintiff shouting these orders.  While he heard the order, plaintiff testified that these orders were "just requests."  56.1, ¶16.   As plaintiff declined to comply with lawful orders to disperse obstructing the street at that location probable cause existed for his arrest under N.Y. PL § 240.20(5) and (6).

### F. Plaintiff's Retaliation Claim Fails as There Was Probable Cause to Arrest Plaintiff

In order to state a claim for First Amendment retaliation, plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right."  Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010).

Plaintiff's First Amendment retaliation claim fails, as probable cause existed for his arrest; qualified immunity shields the actions of the officers and he does not sufficiently plead that the actions of the officers were caused by his exercise of his First Amendment rights. Probable cause is a complete defense to a claim of First Amendment retaliation. Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012). Here, as outlined above, probable cause renders plaintiff's seizure proper and precludes liability for First Amendment retaliation. Probable cause and qualified immunity renders Plaintiff's seizure privileged, and his First Amendment claim must be dismissed.

## II.    PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE MUST BE DISMISSED

During a massive protest a tumultuous crowd of protestors were bringing Times Square, the so called "crossroads of the world" to a halt. This situation was so volatile, that after barricades were brought in, the police had to resort to cavalry to keep the crowd back. Plaintiff concedes that he construed police orders as mere "requests," the scene was bedlam, and the crowd was crushing. 56.1 ¶ 16-18. Through that crowd plaintiff came forward to wildly gesture at the police while cursing at them, aggressively gesturing at them over the barricades, and striking Officer Meade. 56.1 ¶ 34, 36, 37, 40, 42. In that chaotic context, where police are struggling to maintain any order with all tools at their disposal, where plaintiff was aggressively striking and confronting officers, and plaintiff is struggling with them and backing up as they try to place him under arrest, the force used was reasonable. Crucially, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 397 (1989) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Whether force used is excessive is objectively assessed from the perspective of a reasonable officer on the scene who was compelled to use force. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to

make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. 396-97. Under Graham v. Connor the Court must weight "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989). Here, plaintiff violently confronted officers in a scene he called 'bedlam;' he then attempted to back away and resist arrest when officers tried to place him under arrest striking an officer as he cursed at them while he construed their lawful orders as 'requests.'

"The right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest. Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012) (citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001)). Here, plaintiff alleges that he was struck in the head by Officer Meade. However, that action, in the context of this arrest is reasonable and plaintiff's force claim must be dismissed. See Jackson v. City of New York, 2005 U.S. LEXIS 12986 (S.D.N.Y 2005) (Motion granted in favor of defendants on plaintiff's claim that he was beaten in his chest, groin and head during struggle with officers). In a scene so chaotic that the police had to literally 'call in the cavalry,' with thousands blocking the purported "crossroads of the world," police struggled to maintain order despite the use of barricades and mounted officers. Through that crowd of thousands, plaintiff, a large man, approached a police line cursing at the officers, gesticulating wildly and striking one of the officers in the course of their interaction. 56.1 ¶ 34, 36, 37, 40, 42. After striking Officer Meade, he admits he took a defensive stance against the police as he continued to curse and criticize. 56.1 ¶ 38-42. After Chief Esposito attempted to place plaintiff under arrest, plaintiff

admits plaintiff attempted to get away.  56.1 ¶ 43-45.  Chief Esposito struggled to place plaintiff under arrest at that time and ultimately fell to the ground as plaintiff grabbed ahold of the Chief. 56.1 ¶ 44-47.  Officer Meade attempted to get plaintiff to let the Chief go by verbal orders, and struggling with his arm before resorting to striking plaintiff.  56.1 ¶ 48-52.

       The Second Circuit has been clear that the level of injuries also speak to the reasonableness of force used.  Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010) (Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting). Therefore, where an arrestee suffers minimal injuries, or fails to provide evidence of any alleged injuries, an excessive force claim must fail. Esmont v. City of New York, 371 F.Supp. 2d 202, 214 (E.D.N.Y. 2005). As a result, "a de minimis use of force will rarely suffice to state a Constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  In order to prevail on a claim for excessive force, a plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New York, 03 Civ. 8276 (LAP, 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005) (citing United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).

       "[T]he extent of injury suffered by [a plaintiff] is one factor that may suggest 'whether the use of force could plausibly have been thought necessary" in a particular situation. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). "The extent of injury may also provide some indication of the amount of force applied." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam).  "Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries."  Higginbotham v. City of New York, 14 Civ. 8549

(PKC), 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015) (collecting cases).  Here, any injury was so slight that plaintiff never sought medical treatment after the incident.  He refused medical treatment at the police precinct, and his prisoner movement slip shows a lack of injury anywhere on his head.   Robinson Decl., Ex. D.  Finally, to the extent any force claim survives, it must be limited to the only defendant involved.  Plaintiff was clear that the only excessive force allegations, and certainly the only excessive force attributable to any defendant, stems from Officer Meade striking him while plaintiff struggled with Chief Esposito.  The claim of excessive force must be dismissed against Chief Esposito and Officer Mullane outright.[2]  Any use of force was reasonable under the circumstances, plaintiff does not attempt to ascribe any force to two of the individual defendants, his injuries were <u>de minimis</u> and alternatively defendants are entitled to qualified immunity for any force used.

## III.   PLAINTIFF'S MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED

Under New York law, in order for plaintiff to prevail on a malicious prosecution claim he must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."  <u>Posr v. Court Officer Shield # 207</u>, 180 F.3d 409, 417 (2d Cir. 1999) (citations omitted).  Further, under §1983, plaintiff must also show that there was 5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights.  <u>Rohman v. New York City Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).

---

[2] Additionally, as set forth <u>infra</u>, Officer Mullane was undeniably not present for any use of force.  Chief Esposito, while present, was not alleged to have used force, and he was unable to intervene as he was initially falling to the ground in the struggle to arrest plaintiff.  Regardless he did did intervene within at most two seconds of Officer Meade striking plaintiff, as plaintiff concedes.  56.1 ¶ 52-55.

As there was probable cause for plaintiff's prosecution no malicious prosecution claim can lie. See Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012) ("Fabrikant's claims of malicious prosecution, unreasonable search and seizure,  and First Amendment retaliation fail because defendants had probable cause…") As discussed, supra, there is ample evidence to establish probable cause and qualified immunity to arrest plaintiff.  Here, where the alleged facts are undisputable and depicted on video, malice simply cannot lie and plaintiff's claim must fail.  Strumpf v. Asdourian, 2006 N.Y. Misc. LEXIS 3976 (N.Y. Sup. Ct. 2006) ("The Court of Appeals has long held that the term malice, in the context of malicious prosecution, means conscious falsity.")

This claim also must fail to the extent a defendant did not offer advice or encouragement to prosecutors to act in prosecuting plaintiff. See DeFilippo v. County of Nassau, 183 A.D.2d 695, 696 (2d Dep't 1992).  Evidence in the record shows that only officer involved in initiating the prosecution, Officer Mullane, accurately reported plaintiff's erratic and tumultuous behavior as it was described to him.  Officer Mullane is entitled to rely upon the representations of other officers under the fellow officer rule and any claim against him must be dismissed.

Chief Esposito signed off on a supporting deposition that affirmed the criminal complaint, though he noted that plaintiff only attempted to push the police barriers aside, and did not successfully go through them.  Similarly, this event, including plaintiff clutching at Chief Esposito's left chest area where his badge was, are described in the complaint.

Finally, plaintiff is unable to plead or prove that he was subject to a "deprivation of liberty consistent with the concept of seizure," Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d. Cir. 2013). Here there is no evidence to suggest plaintiff was required to post bail, that his court appearances were an insurmountable number, or that his ability to travel was limited in

14

anyway. See Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997).   Plaintiff was released on his

after his arraignment. 56.1 ¶ 66. He was able to return home to Delaware at that point.   He

appeared in Court only two more times, on November 21, 2011, and January 23, 2012 before

being arrested for bringing a gun and ammunition into the criminal Courthouse.  56.1 ¶ 69.  See

Seabrook v. City of New York, 2016 U.S. Dist. LEXIS 17113, at *10-11 (E.D.N.Y. Feb. 10,

2016) (in analyzing plaintiff's prosecution related claims, the Court found that plaintiff failed to

show a sufficient deprivation of his post-arraignment liberty as he faced other charges). Based on

the foregoing plaintiff's malicious prosecution claim must be dismissed as his arrest and

prosecution were privileged, as there was no malice as the incontrovertible record shows, and as

any deprivation of liberty sufficient to raise a malicious prosecution claim is creditable to his

arrest and conviction for bringing a loaded weapon to a courthouse.   Accordingly his malicious

prosecution claim must be dismissed.

## IV.    PLAINTIFF'S ABUSE OF PROCESS CLAIM MUST BE DISMISSED

In New York, "a malicious abuse-of-process claim lies against a defendant who

(1) employs regularly issued legal process to compel performance or forbearance of some act (2)

with intent to do harm without excuse of justification, and (3) in order to obtain a collateral

objective that is outside the legitimate ends of the process." Savino v. City of New York, 331

F.3d 63, 77 (2d Cir. 2003); Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).

Here, plaintiff cannot identify any process that defendants employed in order to

obtain a collateral objective, which is fatal to his abuse of process claim. As noted in De Santis v.

City of New York, the requirement of a collateral objective is not met merely by showing a

malicious motive; there must be an improper purpose for the use of process.  De Santis v. City of

New York, 2011 U.S. Dist. LEXIS 99126, at *24 (S.D.N.Y. 2011); Hauser v. Bartow, 273 N.Y.

370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of

the court.")).  See also Marom v. City of New York, No. 15-cv-2017 (PKC), 2016 U.S. Dist.

LEXIS 28466, at *26 (S.D.N.Y. Mar. 7, 2016) (In dismissing Occupy Wall Street plaintiffs'

malicious abuse of process claim, the Court noted that "[a] malicious motive alone, [], does not

give rise to a cause of action for abuse of process.") (citations omitted).

   Further, there are no facts to suggest a collateral objective occurred after the

criminal process was initiated. See Richardson v. N.Y.C. City Health & Hosps. Corp., 2009 U.S.

Dist. LEXIS 25247, at *45-47 (S.D.N.Y. 2009) (collecting cases); Lopez v. City of New York,

901 F. Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after

the process is issued; the mere act of issuing process does not give rise to a claim.")  Plaintiff can

set forth no facts regarding any defendants' post-arraignment conduct.

   Moreover, plaintiff pleads no plausible facts to suggest he suffered actual or

special damages from the alleged abuse of process. See Bd. Of Educ. v. Farmingdale Classroom

Teachers Ass'n, 38 N.Y.2d 397, 405 (1975) (citing  Bohm v. Holzberg, 365 N.Y.S.2d 262, 264

(App. Div. 1975) ("[P]laintiff's allegations contain no mention of special damage…the law is

clear that a cause of action for [abuse of process] must contain a statement of reasonably

identifiable losses sustained by the plaintiff…"). Finally, plaintiffs' abuse of process claim must

also be dismissed as duplicative of his First Amendment retaliation or malicious prosecution

claims.  See, e.g., Zahrey v. City of New York, 2009 U.S. Dist. LEXIS 31893, * 34-35 (S.D.N.Y.

2009) (dismissing some of plaintiff's claims as duplicative where cause of action was subsumed

in plaintiff's other more specifically-alleged constitutional violations). Based on the foregoing,

any claims predicated on a malicious abuse of process must be dismissed.

   Plaintiff can put forth no facts upon which to establish his abuse-of-process claim.

Because there is no evidence in the record whatsoever that any of the defendants acted with

malice or with a collateral objective that was outside the legitimate ends of the legal process and because defendants had probable cause to arrest the defendant, as discussed <u>supra</u>, plaintiff's malicious abuse of process claim must be dismissed.

## V.   PLAINTIFF'S FOURTEETH AMENDMENT DUE PROCESS CLAIM MUST BE DISMISSED

Plaintiff alludes to distinct claims under the 14th Amendment, without specifically enumerating any facts related to those claims.   Summary judgment should be granted with respect to his 14th Amendment claims.   Plaintiffs fail to expand upon these claims and cannot set forth any facts that support them.   <u>Ying Jing Gan v. City of New York</u>, 996 F.3d 522, 532 (2d Cir. 1993).   "Where another provision of the Constitution provides an explicit textual source of Constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."   <u>Southerland v. City of New York</u>, 667 F.3d 87, 103 (2d Cir. 2011) (<u>quoting</u> <u>Kia P. v. Mcintyre</u>, 235 F.3d 749, 757 (2d Cir. 2000)). Any claim under the equal protection clause fails as plaintiff cannot point to any admissible evidence that identifies him as treated differently from other individuals who were deliberately defying lawful orders to move on, and aggressively confronting police officers and leaning over barriers.   <u>Gonzalez v. City of New York</u>, 38 Fed. Appx. 62, 64 (2d Cir. 2002); <u>LaTrieste Rest. & Cabaret v. Vill. of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## VI.   PLAINTIFF FAILS TO ESTABLISH PERSONAL INVOLVEMENT AND HIS FAILURE TO INTERVENE AND SUPERVISORY LIABILITY CLAIMS MUST BE DISMISSED

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006).   Nonetheless even where an officer did not personally act, an officer can be held liable for

failing to intercede/intervene where "that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Here plaintiff must concede that Officer Mullane was not involved in the decision to arrest or prosecute plaintiff or any use of force.  Officer Mullane saw plaintiff for the first time when he was standing in handcuffs.  See 56.1 ¶57.  Regardless, Officer Mullane is shielded from any liability by the fellow officer rule for relying on the facts relayed to him.[3]  Plaintiff cannot show that Officer Meade was personally involved in any claim except his force allegation.  Officer Meade did not make the decision to arrest plaintiff or have any participation in plaintiff's prosecution.  Finally, plaintiff cannot show that Chief Esposito was in any way involved in any excessive use of force against plaintiff. Additionally, plaintiff has also failed to show that either of these individuals had any realistic opportunity to intervene in order to prevent any alleged constitutional harm from occurring.  56.1 ¶¶54-55.

An officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen has been unjustifiably arrested, or (3) any, constitutional violation has been committed by a law enforcement official." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  A plaintiff cannot succeed on a

---

[3] "Under the fellow officer rule, a police officer can make a lawful arrest even without personal knowledge sufficient to constitute probable cause, so long as the officer is acting upon the direction of or as a result of communication with a fellow officer.. Such information from another officer is presumptively reliable. Unless the arresting officer's reliance on the transmitted information is unreasonable under the circumstances, information received from another officer is sufficient to establish probable cause, regardless of the Plaintiff's actual guilt or innocence."  Williams v. City of New York, 2012 U.S. Dist. LEXIS 21729, 16-18 (S.D.N.Y. Feb. 17, 2012) (After a drug sale, a radio description by undercover justifies stop and search, subsequent show up identification by undercover justifies the arrest.); quoting People v. Ramirez-Portoreal, 88 N.Y.2d 99, (1996); People v. Ketcham, 93 N.Y.2d 416, (1999); Spencer v. Ellsworth, 2011 U.S. Dist. LEXIS 49984, *6 (S.D.N.Y. May 10, 2011).

claim for failure to intervene under § 1983 when there is no underlying constitutional violation. Wieder v. City of New York, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order) ("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of plaintiffs failure to intervene claim."), cert. denied, 135 S. Ct. 2843, 192 L. Ed. 2d 876 (2015). In addition, "for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id.

Assuming *arguendo* that the force used by Officer Meade was excessive; plaintiff cannot show that Chief Esposito had any realistic opportunity to intervene to prevent the harm.  While effecting the arrest, Chief Esposito began to fall to the ground during the struggle with plaintiff. 56.1 ¶47.  Officer Meade saw Chief Esposito fall to the ground during the struggle with plaintiff. 56.1 ¶48.  Officer Meade tried to release plaintiff's grip on Chief Esposito.  56.1 ¶50. Unable to get plaintiff to release his grip on the Chief, Officer Meade struck plaintiff to force plaintiff to release his grip from the Chief.  56.1 ¶51.  Chief Esposito did not see Officer Meade strike plaintiff.  56.1 ¶53.  When the Chief got back up from the ground, video evidence shows, and plaintiff concedes, that the Chief removed himself and Officer Meade from the scene as other officers were effecting plaintiff's arrest. 56.1 ¶¶54-55.  Clear video evidence provided  by plaintiff shows that the only reasonable opportunity the Chief would have had to prevent the alleged excessive force by Officer Meade, was when he got up off of the ground, which is exactly the point that he removed himself and Officer Meade away from the scene.  Accordingly, no liability can attach, and plaintiff's claim for failure to intervene must be dismissed.

Supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989)

(quoting <u>McCann v. Coughlin</u>, 698 F.2d 112, 125 (2d Cir. 1983)).  Plaintiff cannot demonstrate that Chief Esposito was grossly negligent in supervising any subordinate defendant who committed any alleged constitutional violation in this case.

## VII. PLAINTIFF'S MONELL CLAIM MUST BE DISMISSED AS HE DID NOT SUFFER A CONSTITUTIONALLY COGNIZABLE INJURY

### A. Plaintiff Has Failed to Plausibly Present a Claim for Municipal Liability

Plaintiff presents a bare six paragraphs to allege that the City of New York has an unconstitutional policy.  Exhibit A, ¶¶ 64-68.  Plaintiff alludes only to unspecified "acts and omissions" carried out pursuant to "policies and practices."  Id. ¶ 64.  Plaintiff fails to lay out in any more detail what the alleged unconstitutional policies or practices are.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009).

Plaintiffs' barebones <u>Monell</u> claim must be dismissed as insufficiently pled and implausible as a matter of law.  Plaintiff has outright failed to present a theory of municipal liability, and that failure is fatal.  "[P]laintiffs have neither plausibly alleged that the officers intended to discourage protesting nor explained why, had they intended to do so, they would have arrested only the protesters who [violated the law]."  <u>Garcia v. Bloomberg</u>, 865 F. Supp. 2d 478, 492-3 (S.D.N.Y. 2012) (dismissing as implausible plaintiff's broad conspiratorial policy to allegedly deter Occupy Wall Street protests).

Whatever plaintiff's theory, it remains undisclosed on the basis of his complaint. Exhibit A.  That failure to present a municipal liability theory, let alone to provide sufficient pleadings to plausibly present such a claim, is fatal.  Even when looking to a clearly stated theory that as alleged is "consistent with an unlawful agreement," the Court must dismiss that same

claim where it is "more likely explained by, lawful [] behavior." Atlantic Corp. v. Twombly, 550 U.S. 544, 567 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 681-2 (2009) ("Taken as true, these allegations are consistent with [discrimination based on race, religion or national origin].  But given more likely explanations they do not plausibly establish this purpose.")

Assuming arguendo that the officers' actions violated his constitutional rights, plaintiff has merely pleaded one, isolated instance of alleged misconduct. This single example (coupled with Plaintiff's cursory recitation of legal principles) falls far short of the requisite factual showing that an NYPD custom or policy caused similar constitutional harm. See Curry v. City of Syracuse, 316 F.3d 324, 330 (2d Cir. 2003) (citation and internal quotation marks omitted) (upholding dismissal of a complaint "devoid of any allegations which would support liability under Monell," and noting that "a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees"); Barnes v. City of New York, 2015 U.S. Dist. LEXIS 113279, 19-20 (S.D.N.Y. Aug. 26, 2015).

Here, plaintiff failed to present a theory of what improper policy he claims, and has failed to plausibly present the same.  Accordingly, his municipal liability claim must be dismissed.

### B. Plaintiff's Municipal Liability Claim Fails as He Did Not Suffer Any Constitutional Violation By Defendants

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior*.  Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

Where there is no underlying constitutional violation, there can be no liability pursuant to Monell.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Regardless of what policy plaintiff meant to frame, the claim fails.  Plaintiff's arrest was justified, and any

force was reasonable to place plaintiff in custody as he struggled with the officers.  As he has not suffered any underlying constitutional violation, plaintiff cannot maintain a claim for <u>Monell</u> liability on any theory.

### C.  Plaintiff's Municipal Liability Claim Fails as He Cannot Present Any Evidence of a Municipal Policy, Custom, or Practice that Caused His Alleged Constitutional Violation

Even if plaintiff's municipal liability claim is not dismissed for their failure to present any plausible theory, and despite defendants' lawful conduct, he will be unable to establish entitlement to relief under any theory with admissible evidence, as he must at this stage. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Further, plaintiff will be unable to establish that his arrest in Times Square at a protest that stopped traffic, after striking a police officer, and following his tumultuous and fighting behavior when being place under is arrest, was traceable to the broad policy he alleges against defendant City of New York in this case, as he must.  "The plaintiffs cannot bridge the gap between the broad, conspiratorial policy they attribute to the City and the violations that they have plausibly alleged in this case." <u>Garcia</u>, 865 F. Supp. 2d 492.

### VIII.  THE INDIVDUAL OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants are entitled to qualified immunity if they can satisfy either part of a two part test.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Garcia v. Doe</u>, 779 F.3d 84, 92 (2d Cir. 2014).  (see also <u>Wood v. Moss</u>, 134 S. Ct. 2056, 2059 (2014)).  <u>Bradway v. Gonzales</u>, 26 F.3d 313, 317-18 (2d Cir. 1994) ("qualified immunity shields public officials performing discretionary functions from civil liability insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights.").

The requirement that a right be clearly defined requires a considerable showing keyed to the particular circumstances the individual defendants confronted.  "[I]n the light of pre-existing law the unlawfulness must be apparent.  In other words, existing precedent must have placed the statutory or constitutional question . . . beyond debate." Occupy Nashville v. Haslam, 769 F.3d 434, 442-43 (6th Cir. 2014) (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014); Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Viewing this requirement from the defendant's perspective the courts have consistently affirmed that the defendants' actions must be so beyond the pale, and the right so distinctly defined, that not a single reasonable official could think that conduct lawful.  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).  By either analysis "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is an objective test based on the knowledge possessed at the time, but without considering the subjective intent, motives or beliefs of the government official. Garcia v. Doe, 779 F.3d 92.  As in Garcia, to an officer aware of the orders, plaintiff's failure to leave when asked made his subject to arrest.  A finding of qualified immunity or arguable probable cause precludes liability on any theory premised on his arrest including First Amendment retaliation, malicious prosecution, and abuse of process.  Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012); See Betts v. Hearman, 751 F.3d 78, 81 (2d Cir. 2014).

For the reasons set forth above, defendants are entitled to qualified immunity on the questions of his arrest, prosecution, and Fourteenth Amendment claims.  Plaintiff's actions ignored lawful orders, contributed to a tumultuous scene, and were aggressive, violent and confrontational towards the police.  Clearly Defendant Esposito was at least arguably reasonable in determining that plaintiff was subject to arrest and prosecution.

Similarly, qualified immunity applies with equal force to questions of excessive force.  "Qualified immunity thus applies as reasonable officers could differ on whether this particular use of non-lethal force was appropriate given the exigency of the situation."  Estate of Jaquez v. City of New York, 104 F. Supp. 3d 414, 435 (S.D.N.Y. 2015); See Crowell v. Kirkpatrick, 400 Fed. Appx. 592 (2d Cir. 2010) (Qualified immunity available to officers who used tasers against non-violent, passively resisting trespassers); Tracy v. Freshwater, 623 F.3d 90, 97 (2d Cir. 2010) (Striking multiple times with a metal flashlight in the course of a hand-t006F-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting).  "[T]he qualified immunity defense is generally available against excessive force claims [where] a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances."  Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830, *20 (S.D.N.Y. 2013) (citing Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) ("[O]fficers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force." (quotation marks omitted)).

Here, as set forth above, plaintiff was present at a protest where thousands crushed into Times Square, stopping traffic and causing "bedlam" as he describes it.  56.1 ¶ 5-6,

16-18.  In response he construed lawful police orders to get back as suggestions and instead decided to aggressively approach, shove, and curse at police, before resisting arrest, and struggling with the Police Chief placing him under arrest.  56.1 ¶ ¶ 34, 36, 37, 40, 42.  Given the totality of circumstances, including the chaotic scene, aggressive instigation by plaintiff, and struggle with Chief Esposito, the momentary use of force to get plaintiff under arrest and in custody was at least arguably reasonable, particularly when viewed objectively as an officer on scene would have.  Momentarily striking an individual with a fist over a few seconds as he fights with the Police Chief refuses to be arrested, and violently confronting police in a situation so chaotic they had literally called in the cavalry is subject to qualified immunity, particularly at such a dangerous and evolving scene.  Reasonable officers could at least disagree about the propriety of those few strikes, which incidentally were slight enough to see any medical treatment declined.  Regardless, after initiating that confrontation himself, plaintiff cannot claim that clearly established law prohibits that brief contact.  For these reasons defendants are entitled to qualified immunity on each of plaintiff's claims, including for excessive force.

## **<u>CONCLUSION</u>**

For the foregoing reasons, defendants City of New York, Joseph Esposito, Shreeganesh Meade and Patrick Mullane, respectfully request that the Court grant their motion for summary judgment in its entirety, together with costs, fees and such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        September 16, 2016

                            ZACHARY W. CARTER
                            Corporation Counsel of the City of New York
                            *Attorney for Defendant City of New York*
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2323

                            By:  _____/s/_____

                                 Amy Robinson
                                 Special Assistant Corporation Counsel
                                 Andrew Lucas
                                 Senior Counsel
                                 Special Federal Litigation Division