```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JOHN SCOTT DEKUYPER,                     :   14cv8249 (DLC)
                                         :
                Plaintiff,               :   OPINION AND ORDER
                                         :
        -v-                              :
                                         :
THE CITY OF NEW YORK, NEW YORK CITY      :
POLICE DEPARTMENT ("NYPD") CHIEF OF      :
DEPARTMENT JOSEPH ESPOSITO, NYPD         :
OFFICER PATRICK MULLANE, SHIELD NO.      :
5171, NYPD OFFICER FNU/LNU SHIELD NO.    :
867 (believed to be either PEDRO CABAL   :
or SHREEGANES MEADE), and NYPD           :
OFFICERS JOHN and JANE DOE #1-5 (The     :
names being fictitious, as the true      :
names and shield numbers are no          :
presently known) in their individually   :
and official capacities,                 :
                                         :
                Defendants.              :
                                         :
---------------------------------------- X
```

APPEARANCES

For the plaintiff:
Gideon Orion Oliver
Gideon Orion Oliver
277 Broadway, Suite 1501
New York, NY 10007

For the defendants:
Amy Robinson
Andrew Joseph Lucas
New York City Law Department
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

   This case concerns a confrontation between plaintiff John Dekuyper ("Dekuyper") and officers of the New York City Police

Department ("NYPD"), leading to Dekuyper's arrest.  The arrest occurred during an October 15, 2011 protest organized by the group Occupy Wall Street ("OWS").  Dekuyper has sued the City of New York (the "City") as well as three of the NYPD officers involved in his arrest: Joseph Esposito ("Esposito"), Shreeganesh Meade ("Meade"), and Patrick Mullane ("Mullane," collectively, the "Individual Defendants").[1]  Dekuyper has brought claims under 42 U.S.C. § 1983 for (1) false arrest, (2) excessive force, (3) malicious prosecution, (4) abuse of process, (5) violation of the Fourteenth Amendment, (6) a failure to intervene claim against Esposito, and (7) a Monell claim against the City.  The defendants have moved for summary judgment.  For the reasons that follow, the Monell claim against the City is dismissed.  The motion is otherwise denied.

## Background

The following facts are undisputed unless otherwise noted.  On October 15, 2011, Dekuyper attended an OWS protest that began in Zuccotti Park in Lower Manhattan and ended in Times Square.  According to Dekuyper, tens of thousands of protesters

---

[1] Dekuyper initially named a fourth officer, Pedro Cabral ("Cabral"), as a defendant.  The claims against Cabral were dismissed with prejudice by stipulation entered on July 8, 2016.

participated in the protest.  Dekuyper arrived at Zuccotti Park at approximately 8:00 a.m. and arrived in Times Square between 4:00 and 5:00 p.m.

When the protesters arrived in Times Square, NYPD officers had erected barricades in the vicinity of Seventh Avenue, which resulted in the protesters being "cordoned in," at which time the protesters walked into the street.  A video of the protest shows a chaotic scene in which a large number of protesters came into contact with police officers, who were on foot and mounted on horses.  Some of the protesters attempted to lift the NYPD barricades or push the barricades towards the police officers.  Dekuyper denies lifting, pushing, or damaging any of the NYPD barricades.

At approximately 6:00 p.m., Dekuyper was present in the vicinity of Seventh Avenue and 46th Street.  Esposito, the highest ranking uniformed officer in the NYPD at that time, was present in Times Square that day.  The protesters were successful in breaking and/or bypassing some of the NYPD's barricades and entered the roadway of Seventh Avenue.  At that time, protesters began to clash with police.  The events that followed, which led up to Dekuyper's arrest, are disputed.

Esposito testified that Dekuyper had two confrontations

3

with the NYPD that day.  According to Esposito, in the first confrontation, Dekuyper pushed the barricade between him and Esposito.  Dekuyper also screamed at police, flaring his arms.  Esposito testified that he was concerned that Dekuyper was going to assault him, and ordered Dekuyper to move back and stop touching the barricade.  Dekuyper then grabbed Esposito's shield and tried to take it from Esposito's shirt.  Esposito attempted to arrest Dekuyper at that time, but other protesters pulled Dekuyper back before Esposito could effectuate the arrest.  Dekuyper denies that this first encounter took place at all, and testified that he had only one confrontation with the NYPD that day: the one in which he was arrested.

     According to the defendants, Dekuyper had a second encounter with the NYPD when he made his way back to the police lines some minutes later.  Dekuyper testified that he yelled at the police to the effect of "why don't you move the horses back?" and may have also said "[f]uck off, stop hitting us."  According to Dekuyper, an officer in a white shirt -- whom he now believes to be Esposito -- grabbed him and told him to depart the area.  Dekuyper responded:

> Why don't you just take down the borders and back up
> with the horses and this thing is over?  You know, we
> are supposed to meet the other people on the other
> side of the street and that's the end of it.  We have

been marching seven hours without a problem. According to the defendants, Dekuyper then either struck Meade -- another NYPD officer present on the scene -- or attempted to grab his shield. Esposito then moved toward Dekuyper, grabbed him, and pulled him in order to place him under arrest. Dekuyper denies striking Meade or any other police officer, denies attempting to steal Esposito or Meade's shield, and denies that he was ever given any orders by the officers.

A video on this incident shows that Dekuyper flared his arms generally in the direction of the officers, and possibly made contact with an officer. Dekuyper appears to be holding onto a barrier and the video also shows NYPD officers striking Dekuyper several times.

Dekuyper was arrested and charged with (1) attempted grand larceny in the fourth degree, N.Y. Penal Law § 155.30, (2) obstruction of governmental administration, id. § 195.05, (3) resisting arrest, id. § 205.30, and (4) disorderly conduct, id. § 240.20(1). Mullane was assigned to process Dekuyper's arrest and transported Dekuyper to the police substation, and later to the Mass Arrest Processing Center at Once Police Plaza. In connection with the arrest, Mullane prepared notes and arrest documents, including a complaint and an "on line booking system

arrest worksheet," which stated that Dekuyper attempted to grab Esposito's shield, acted "disorderly" and was seen "pushing through barriers." The following day, Dekuyper was arraigned and released from custody. The charges were later dismissed.

Dekuyper filed this action on October 15, 2014. On September 16, 2016, following the close of discovery, the defendants filed a motion for summary judgment. The motion became fully submitted on December 2.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). "[W]here the

6

evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## I. Claims Against the Individual Defendants

Summary judgment will not be granted for the claims asserted against the Individual Defendants because the parties dispute several facts material to those claims. Specifically, the parties dispute, inter alia, (1) whether Dekuyper had a "first" confrontation with Esposito, in which Dekuyper attempted to seize Esposito's shield; (2) whether Dekuyper struck Meade or attempted to seize his shield; (3) whether Dekuyper failed to comply with orders from NYPD officers directing him to back away from a police barricade; (4) whether excessive force was used in effectuating the arrest of Dekuyper; and (5) whether the Individual Defendants prepared and/or submitted false documents in connection with Dekuyper's arrest. Because of these disputes, and in viewing the evidence in the light most favorable to Dekuyper, a reasonable juror could find a lack of probable cause to arrest Dekuyper and that the NYPD officers who arrested him used excessive force. Similarly, the Individual Defendants are not entitled to summary judgment on the ground of qualified immunity because factual disputes exist as to whether (1) the arrest of Dekuyper violated his clearly established rights to be free from arrest without probable cause and from

the use of excessive force, and (2) whether it was "objectively reasonable" for the Individual Defendants to believe that their actions did not violate Dekuyper's constitutional rights. Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted).

## II. Monell Claim Against New York City

In a suit brought under § 1983, municipalities cannot be held liable unless the plaintiff can prove that the unconstitutional action was taken pursuant to

> a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.

Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir.2000) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690–91 (1978)) (brackets in original).  To establish a Monell claim against a city for the unconstitutional actions of its employees, "a plaintiff must show: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted).  An "official policy or custom" may be established through the official acts of city lawmakers or "those whose edicts or acts

9

may fairly be said to represent official policy," Monell, 436 U.S. at 694, or by a pattern of misconduct that is "sufficiently persistent or widespread" as to "compel[] the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Dekuyper's theory of Monell liability in his complaint is that the Individual Defendants acted pursuant to policies and practices of the City, which he does not identify. In opposition to the defendants' motion, Dekuyper argues in conclusory fashion and without citation to the record, that Esposito was "the final policymaker for the City" with respect to the use of force in Times Square and the arrest and prosecution of Dekuyper. He also asserts that the City failed to train Esposito and that Esposito failed to supervise Meade.

"Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." Anthony v. City of N.Y., 339 F.3d 129, 139 (2d Cir. 2003). "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Id. (citation omitted). Dekuyper has not identified any specific

NYPD policy or custom that he contends is unconstitutional.  In fact, he has submitted as evidence the NYPD's Patrol Guide, which states that officers' use of force must be consistent with existing law, that officers must use the minimum force necessary, and that the use of excessive force will not be tolerated.  Moreover, Dekuyper has failed to present evidence from which a reasonable jury could find that Esposito had "final decision-making authority" over the NYPD's response to the OWS protest on October 15, 2011.  While it is undisputed that Esposito was, at the time, the highest ranking uniformed officer in the NYPD, there is no evidence that Esposito was responsible for setting NYPD policy with respect to Dekuyper's arrest or the use of force employed.  Nor is there any evidence that, if Esposito had a role in setting NYPD policy, his decision would be final rather than subject to review by the leadership of the NYPD or the City.

Dekuyper's failure to train theory also fails.  "[A] municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training."  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004).  To prevail on a

11

theory of failure to train, a plaintiff must show that municipal officials failed to train employees "under circumstances that could constitute deliberate indifference" and must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Id. (citation omitted). Dekuyper has not identified any specific training deficiency which he contends resulted in the deprivation of his constitutional rights, nor has he introduced any evidence from which a reasonable juror could find that the City acted with deliberate indifference to constitutional violations. Moreover, the video of Dekuyper's arrest reveals that the NYPD officers were confronted with a chaotic scene in which numerous protesters pushed up against barricades, yelled, and in some instances, scuffled with the police officers. The video shows that Meade and Esposito's actions were the result of decisions made in the moment, and there is no evidence that their conduct toward Dekuyper was a result of a training deficiency.

## Conclusion

The Monell claim against the City is dismissed. The defendants' September 16, 2016 motion for summary judgment is

otherwise denied.  The claims remaining for trial are: (1) the § 1983 claims against the Individual Defendants premised on theories of false arrest, use of excessive force, malicious prosecution, abuse of process, and violation of the Fourteenth Amendment; and (2) the § 1983 claim against Esposito premised on the theory of failure to intervene.

Dated:     New York, New York
           December 16, 2016

                               _____
                                        DENISE COTE
                              United States District Judge